E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0142
    E-mail:    daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. CV 2:22-cv-7443-AB |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO CLAIMANTS' MOTION TO DISMISS** |
| v. | Hearing Date: Feb. 3, 2023 |
| $200,000 IN U.S. CURRENCY, | Location:    Courtroom of the Hon. André Birotte |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Dan G. Boyle, hereby files its Opposition to Claimants' December 9, 2022 Motion to Dismiss in this Action. ECF No. 15.

1      This Opposition is based upon the attached Memorandum of Points

2  and Authorities, the files and records in this case, and such further

3  evidence and argument as the Court may permit.

4

5  Dated: January 11, 2023          Respectfully submitted,

6                                   E. MARTIN ESTRADA
                                     United States Attorney
7
                                     SCOTT M. GARRINGER
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9                                    JONATHAN GALATZAN
                                     Assistant United States Attorney
10                                   Chief, Asset Forfeiture and Recovery
                                     Section
11
                                           /s/
12                                   _____
                                     DAN G. BOYLE
13                                   Assistant United States Attorney

14                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.   INTRODUCTION...............................................................1

II.  STATEMENT OF FACTS.....................................................1

III. ARGUMENT...................................................................5

     A.   Relevant Law...........................................................5

     B.   The Court Should Deny the Motion Based on the Numerous
          Allegations in the Complaint Connecting the Defendant
          Currency to Narcotics Trafficking.........................8

     C.   Claimants' Remaining Arguments Lack Merit................13

     D.   The Court Should Permit the Government to Amend as an
          alternative to Dismissal..................................15

IV.  CONCLUSION................................................................16

**TABLE OF AUTHORITIES**

<u>CASES</u>

<u>Ashcroft v. Iqbal,</u>
   556 U.S. 662 (2009)...........................................6

<u>Cahill v. Liberty Mut. Ins. Co.,</u>
   80 F.3d 336 (9th Cir. 1996)..................................6

<u>Conley v. Gibson,</u>
   355 U.S. 41 (1957)..........................................15

<u>Florida v. Harris,</u>
   568 U.S. 237 (2013).........................................12

<u>Lee v. City of Los Angeles,</u>
   250 F.3d 668 (9th Cir. 2001).................................6

<u>United States v. $165,822.00,</u>
   No. 15-CV-1839-JLS, 2018 WL 6167939 (C.D. Cal. Mar. 14,
   2018).......................................................9

<u>United States v. $215,300 U.S. Currency,</u>
   882 F.2d 417 (9th Cir. 1989)................................10

<u>United States v. $225,850.00 in U.S. Currency,</u>
   No. CV 03-6582 GPS (CWX), 2004 WL 7333425 (C.D. Cal. Sept.
   27, 2004)..................................................11

<u>United States v. $493,850.00 in U.S. Currency,</u>
   518 F.3d 1159 (9th Cir. 2008)...............................13

<u>United States v. $67,220.00 in U.S. Currency,</u>
   957 F.2d 280 (6th Cir. 1992)................................8

<u>United States v. $83,310.78 in U.S. Currency,</u>
   851 F.2d 1231 (9th Cir. 1988)...............................8

<u>United States v. 1982 Yukon Delta Houseboat,</u>
   774 F.2d 1432 (9th Cir. 1985)...............................7

<u>United States v. 22,800.00 In U.S. Currency,</u>
   No. 2:17-CV-04611-SVW-AS, 2018 WL 3738962 (C.D. Cal. July
   25, 2018)...................................................9

<u>United States v. All Assets and Equipment of West Side Bldg.
Corp.,</u>
   58 F.3d 1181 (7th Cir. 1995)................................6

<u>United States v. Cruz,</u>
   669 F. App'x. 883 (9th Cir. 2016)...........................9

<u>United States v. Gravenmeir,</u>
   121 F.3d 526 (9th Cir. 1997)...............................15

4

United States v. One Gulfstream G-V Jet Aircraft,
        941 F. Supp. 2d 1 (D.D.C. 2013)..............................16

United States v. Parcels of Land,
        903 F.2d 36 (1st Cir. 1990).................................7

United States v. Real Property Located at 22 Santa Barbara
        Drive,
        264 F.3d 860 (9th Cir. 2001)................................6

United States v. U.S. Currency, $42,500.00,
        283 F.3d 977 (9th Cir. 2002)................................7

WB Music Corp. v. Futuretoday, Inc.,
        No. 2:18-CV-01238-CAS, 2018 WL 4156589 (C.D. Cal. Aug. 28,
        2018).......................................................15


**STATUTES**

18 U.S.C. § 983...............................................5

21 U.S.C. § 881...............................................5

**RULES**

Fed.R.Civ.P. 12(b)(6).........................................5

## I.    INTRODUCTION

It is black letter law that on a motion to dismiss, all inferences are drawn in the non-movant's favor. Yet in their present motion to dismiss (the "Motion" or "Mot."), claimants Jasmol Singh ("Singh") and Umit Bagga ("Bagga," and collectively with Singh, "Claimants") ask the Court to do the very opposite: adopt their proffered innocent explanations of the facts alleged in the Verified Complaint here (the "Complaint" or "Compl.") in order to dismiss this action in its entirety, despite the government's allegations to the contrary. The Court should decline to do so.

In brief, the Complaint alleges that Singh was intercepted on recorded calls with at least one identified drug trafficker discussing exchanges of currency using coded language specific to the drug trafficking organization being investigated, and was then observed attempting to pick up $200,000 in unmarked and unserialized bills from a courier outside of a shopping center, and after this currency was seized, a narcotics detection canine alerted to the currency. While Claimants offer numerous potentially-innocent explanations for these facts, these arguments are inappropriate at the pleadings stage. The Motion should be denied.

## II.    STATEMENT OF FACTS[1]

In September of 2021 members of Drug Enforcement Administration's ("DEA") Riverside Task Force Group-2 ("TFG-2") were conducting an ongoing investigation into a drug trafficking organization (the "DTO") operating in Southern California. See

---

[1] The following facts are drawn from the Complaint (ECF No. 1), and are taken as true for present purposes.

Complaint, ¶ 8. During this investigation, agents and TFOs with TFG-2 identified a multi-kilogram cocaine trafficker who transported and distributed illicit narcotics and narcotics proceeds in the region on behalf of the DTO, referred to in the Complaint as "Trafficker 1." Complaint, ¶ 9. Investigating agents obtained judicial authorization to intercept certain communications, and based on this wiretap investigation, seized multiple kilograms of cocaine, methamphetamine, heroin, and a large amount of U.S. Currency. Complaint, ¶ 9-10.

In September of 2021, Trafficker 1 was intercepted on a phone call speaking with Singh. Complaint, ¶ 10. During the intercepted call, Trafficker 1 and Singh used coded language to discuss the transfer of $80,000.00 in cash to be delivered to another member of the DTO. Id., ¶ 11. Investigating agents were familiar with the coded language used by the DTO based on their ongoing investigation, and specifically, the DTO's use of the word "documents" as a coded reference to thousands of dollars in U.S. Currency. Complaint, ¶ 12. During this intercepted call, agents noted that Singh used this same coded language to refer to U.S. Currency. Id.

Roughly one month later, Singh was again intercepted during TFG-2's investigation. Complaint, ¶ 13. In this call, Singh was contacted by an unknown male (the "UM") and directed to meet and receive "200." Id. During this call, Singh and the UM used the same coded language to discuss U.S. Currency as used by Trafficker 1 during Singh's intercepted call approximately one month earlier. Id. Singh and the UM also discussed a shopping center as the location for this pickup (the "Shopping Center"). Complaint, ¶ 14.

Based on this intercept, TFG-2 agents requested Fontana Police

Department ("FPD") officers establish surveillance the Shopping
Center. Complaint, ¶ 14. FPD officers set up surveillance at the
Shopping Center on October 8, 2021, and during surveillance, observed
an adult male, subsequently identified as Eduardo Castro Gallardo
("Gallardo"), approach another male adult (subsequently identified as
Singh) in front of the Shopping Center. Complaint, ¶ 15-16. Gallardo
handed Singh a dollar bill, which Singh appeared to examine and then
returned to Gallardo. Id. U.S. Currency serial numbers are often used
as a verification measure to deliver or receive narcotics or
narcotics proceeds, as they cannot easily be forged or altered, so if
the subject does not have the correct bill serial number, then
narcotics or narcotics proceeds will not be transferred to them.
Complaint, ¶ 17.

Following this exchange, officers observed Gallardo returning to
a nearby parking lot. Complaint, ¶ 18. Officers approached and
contacted Gallardo as he walked to a white Honda Accord with
California license plate number 8DZB844 (the "Vehicle"). Id. When
Gallardo noticed the FPD officers approaching him, he attempted to
quickly get into the Vehicle's driver-side door. Id. Officers
detained Gallardo and identified him based on a California Driver's
License in his possession. FPD officers identified another person
seated in the front passenger seat of the vehicle as Jesus Eduardo
Gallardo Montoya ("Montoya"). Id.

Gallardo gave verbal consent to a search of the Vehicle, and
during a search, officers discovered and seized $200,000.00 in U.S.
Currency (i.e., the defendant currency). Complaint, ¶ 19. The
defendant currency was packaged in rubber bands inside of a plastic

bag and concealed in a brown cardboard box behind the driver's seat of the Vehicle. Id. The defendant currency had no bank bands or bank markings, and was rubber-banded in a manner consistent with DTO narcotics proceeds. Complaint, ¶ 20.

Gallardo and Montoya each denied ownership of the defendant currency, and each signed a Disclaimer of Ownership and Waiver of Notice form. Complaint, ¶ 21. FPD officers then seized the Defendant Currency, and while the officers were preparing paperwork, Gallardo stated that he was at the location because he had been asked to do someone a favor, but would not give any additional information about the source of the defendant currency. Complaint, ¶ 22. After the officers advised Gallardo of his Miranda rights, he made no further statements. Id. Gallardo and Montoya were each arrested for violations of California Health and Safety Code § 11370.6, but released on scene pursuant to California Penal Code § 849(b). Complaint, ¶ 23.

Upon returning to the FPD station, officers requested a K-9 officer to conduct a sniff of the defendant currency, and FPD Officer B. Terwilliger responded with K-9 officer Axl. Complaint, ¶ 24-25. Axl is certified in odor detection of narcotics including Marijuana, Cocaine, Methamphetamine, Heroin, and Ecstasy; participates in bi-weekly training; is certified in both patrol/narcotics detection annually; and along with Officer Terwilliger, was originally certified in 2019 after completing the "Narcotics Detection" course at Scenturion K9/AEP training facility. Complaint, ¶ 25. Axl is trained to passively alert upon the detection of the odor of narcotics. Id. After conducting a sweep of the surrounding area,

Officer Terwilliger deployed Axl to the search area, and Axl alerted to the bag containing the defendant currency. Complaint, ¶ 26.

The Government commenced a civil forfeiture action against the defendant currency on October 12, 2022. (ECF No. 1.)

### III. ARGUMENT

#### A. Relevant Law

In the Complaint, the Government contended that the defendant currency was subject to forfeiture as proceeds of drug trafficking pursuant to 21 U.S.C. § 881(a)(6), specifically, that the defendant currency represents, or is traceable to, funds furnished or intended to be furnished in exchange for a controlled substance or listed chemical. See Complaint, ¶ 28-29.

In a civil judicial forfeiture action, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "The Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2). A motion to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6).

Rule G of the Supplemental Rule for Certain Admiralty and Maritime Claims sets forth the pleading standards for civil forfeiture actions. See Supplemental Rule for Certain Admiralty and Maritime Claims Rule G(2) (requiring that a complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial").

In determining whether the Government's complaint is sufficient, the facts alleged in the complaint are assumed to be true, and in the context of a Rule 12(b)(6) motion, construed in the light most favorable to the non-movant. United States. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996); see also United States v. $50,040 in United States Currency, No. C 06-04552 WHA, 2007 WL 1176631 at *2 (N.D. Cal. April 20, 2007)("[a]ll material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party"). The complaint must contain enough facts, "accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009). Finally, "when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), '[r]eview is limited to the complaint.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The Government may discharge its ultimate burden of proof in a civil forfeiture action with circumstantial evidence, and is not required to trace specific assets directly to particular criminal violations. See United States v. Real Property Located at 22 Santa Barbara Drive, 264 F.3d 860, 872 (9th Cir. 2001) (circumstantial evidence may be used to show property subject to forfeiture); United States v. All Assets and Equipment of West Side Bldg. Corp., 58 F.3d 1181, 1189 (7th Cir. 1995) ("direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable need not be shown") (internal quotation marks and citation omitted).[2]

---

[2] In addition, it is the law in this circuit that a complaint for forfeiture must also state probable cause at the time filed. See United States v. $493,850 in U.S. Currency, 518 F.3d 1159, 1168–1169

*(footnote cont'd on next page)*

1    In the drug trafficking context, courts have consistently

2    recognized that the clandestine nature of the illegal drug trade

3    makes direct evidence of drug sales (for example, records reflecting

4    dates and parties to the drug transactions and the consideration paid

5    for the drugs) typically unavailable. See United States v. Parcels of

6    Land, 903 F.2d 36, 38 (1st Cir. 1990) (affirming forfeiture judgment

7    for Government: "the government need not trace the [defendant]

8    property to specific drug transactions"); United States v. 1982 Yukon

9    Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985) ("[t]here is

10   no need to tie the [defendant asset] to proceeds of a particular

11   identifiable illicit drug transaction") (citation omitted). The court

12   uses an aggregate of the facts test, under which the fact-finder

13   considers all facts indicative of the alleged illegal activity

14   cumulatively, with no single factor being dispositive, in deciding

15   whether there is a sufficient nexus between the assets sought to be

16   forfeited and the illegal activity alleged to support the forfeiture.

17   See United States v. U.S. Currency, $42,500.00, 283 F.3d 977, 980-82

18   (9th Cir. 2002).

19

20

21

_____

22   (9th Cir. 2008). For this reason, courts in this Circuit often
     discuss motions to dismiss in terms of both probable cause and
23   sufficiency under Rule 12(b)(6), and at times consider these burden
     in largely similar terms. See, e.g., United States v. $50,000 In U.S.
24   Currency, No. 22-CV-10085-RGK, 2021 WL 1593244, at *2 (C.D. Cal. Mar.
     1, 2021) ("The government has probable cause when it has reasonable
25   grounds to believe that the property was related to an illegal drug
     transaction, supported by less than prima facie proof but more than
26   mere suspicion. To meet this burden, the government need not tie an
     asset to a specific drug transaction, but may establish by
27   circumstantial evidence that the seized asset is linked to drug
     trafficking in general" (internal citation omitted)).
28

7

B. **The Court Should Deny the Motion Based on the Numerous Allegations in the Complaint Connecting the Defendant Currency to Narcotics Trafficking**

The facts alleged in the Government's complaint, considered in the aggregate, sufficiently allege the requisite nexus between the defendant currency and narcotics trafficking.

First, Trafficker 1 was known to law enforcement to be a narcotics trafficker.[3] As detailed in the complaint, Trafficker 1 was intercepted on calls discussing narcotics transactions, and law enforcement seized substantial amounts of narcotics from Trafficker 1 and his co-conspirators. Complaint, ¶ 9. Such record of drug activity "is a highly probative factor in the forfeiture calculus." United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 286 (6th Cir. 1992); see also United States v. $83,310.78 in U.S. Currency, 851 F.2d 1231, 1236 (9th Cir. 1988). Trafficker 1 is alleged to have spoken directly to Singh regarding pickups of U.S. Currency using coded language, and that same coded language was used by Singh and an unidentified person immediately prior to the intended handoff of the defendant currency. Complaint, ¶ 10-13.

Second, the use of coded language itself is indicative of a nexus with narcotics trafficking. As alleged, Singh knew the DTO's coded language and spoke with an identified member of the DTO

---

[3] Claimants argue that the government's failure to identify Trafficker 1 by name renders the Complaint insufficient. See Mot. at 4-5. This argument is meritless. Claimants do not cite a single case in support of this argument, and certainly no authority holding that third-parties must be identified by name. In any event, the Complaint provides substantial information sufficient for Claimants to identify Trafficker 1 even before discovery begins, including describing the details of calls between Singh and Trafficker 1. See Complaint, ¶ 10-11. It is difficult to believe that Singh had multiple calls in that one month discussing the pickup of $80,000 using the specific coded language identified.

regarding pickup of U.S. Currency using coded language, and then used the same coded language on a later date to arrange the attempted pickup of the defendant currency. Complaint, ¶ 10-13; see United States v. $165,822.00, No. 15-CV-1839-JLS, 2018 WL 6167939, at *5 (C.D. Cal. Mar. 14, 2018) (probable cause finding supported by "intercepted phone calls in which Le used coded language to arrange for the delivery of U.S. currency to DTO members").

Third, the circumstances of the interrupted handoff of the defendant currency leads to an inference of drug trafficking. As alleged in the complaint, before the defendant currency was to be exchanged, Singh and Gallardo exchanged a U.S. currency bill and were observed to be confirming the serial number on the bill. Complaint, ¶ 15-17. As alleged, this is a common technique used by narcotics traffickers to identify counterparties to a transaction. Id.

Fourth, the defendant currency was marked and banded in a manner consistent with drug proceeds. See Complaint, ¶ 20 (defendant currency "found in a bag, without any bank bands or markings, and was rubber-banded in a manner consistent with DTO narcotics proceeds"). See United States v. Cruz, 669 F. App'x. 883, 883-884 (9th Cir. 2016) (affirming summary judgment for government where, inter alia, claimant possessed a large amount of cash in small and varied denominations, rubber-banded together in separate bundles); United States v. 22,800.00 In U.S. Currency, No. 2:17-CV-04611-SVW-AS, 2018 WL 3738962, at *3 (C.D. Cal. July 25, 2018) (denying motion to dismiss based on amount of seized currency, inconsistent packaging, lack of proper bank markings, and positive dog sniff alert).

Fifth, the courier's disclaimer of ownership of the defendant

9

currency, nervous response, and lack of any innocent explanation similarly supports a nexus to the drug trade. <u>See Currency, U.S. $42,500.00</u>, 283 F.3d 977, 982 (9th Cir. 2002) (probable cause where courier was "carrying a substantial sum of money, $42,500 in cash, obtained from an unknown man, to be delivered to another man, identified only as Jose" and courier "denied knowing who owned the funds she carried across the country and disclaimed ownership both verbally and in writing."). Here, both Gallardo and Montoya disclaimed any interest in the defendant currency, and when questioned, Gallardo described the attempted handoff as doing a "favor" for an unidentified friend. Complaint, ¶ 21-22. Describing the delivery of $200,000 in cash in a parking lot at night as a "favor" is exactly the sort of implausible explanation courts found not to be credible at the pleading stage. <u>United States v. $215,300 U.S. Currency</u>, 882 F.2d 417, 419 (9th Cir. 1989) (courier's concealing or lying about source of money supports inference of drug nexus). Similarly, when Gallardo saw the FPD officers approaching, he attempted to move quickly to the vehicle to avoid contact with them. <u>See 40,200.00 in U.S. Currency</u>, No. CV-14-6526-MWF (ASX), 2015 WL 12914363 at *6 (C.D. Cal. Aug. 24, 2015) (claimant's "anxious behavior before the LAXNTF officers" supported probable cause).

Finally, as alleged in the complaint, a narcotics-detection canine alerted to the defendant currency. Claimants' cite a series of older cases attempting to cast doubt on the reliability of dog alerts, but ignore more recent Supreme Court precedent firmly

establishing the validity of such evidence.[4] For example, in <u>United States v. $22,474 in U.S. Currency</u>, the Ninth Circuit reviewed the landscape of pre-CAFRA law on probable cause based on dog alerts, and found probable cause where the government provided evidence that "unless the currency [] was carrying had recently been in the proximity of cocaine, the detection dog would not have alerted to it." 246 F.3d 1212, 1216 (9th Cir. 2001). One year later, in <u>United States v. Currency, U.S. $42,500.00</u>, the Ninth Circuit held that "[A] sophisticated dog alert, where the dog reacts only to ephemeral by-products of narcotics and not to commonly circulated currency, is an important factor in determining probable cause." 283 F.3d 977, 982 (9th Cir. 2002). While Claimants' may seek to dispute Axl's sophistication, a "dispute over the nature of the canine alert is a genuine issue of material fact that defeats summary judgment." <u>United States v. $225,850.00 in U.S. Currency</u>, No. CV 03-6582 GPS (CWX), 2004 WL 7333425, at *3 (C.D. Cal. Sept. 27, 2004).

Claimants also ignore the Supreme Court's 2013 decision in <u>Florida v. Harris</u>, which affirmed long-standing precedent that probable cause requires nothing more than facts sufficient to create

---

[4] As authoritative treatises have recognized, the law has seen significant change on dog alerts since this pre-CAFRA case law. <u>See</u> <u>Stefan Cassela</u>, Asset Forfeiture Law in the United States, 2d ed., § 3-6 ("[I]n the mid to late 1990s, courts began to question the validity of the dog alert, suggesting that if – as was alleged to be the case – the vast majority of currency in circulation in the United States is tainted with cocaine residue, then an alert by a drug dog says nothing of any legal significance regarding the relationship of a sum of money to any drug offense that would support a forfeiture. The most recent cases, however, have accepted scientific evidence that a drug dog does not alert to cocaine itself or to any cocaine residue that may have adhered to seized currency. Rather, the dog alerts to a chemical by-product called methyl benzoate that evaporates if the currency is exposed to the air.").

"the kind of fair probability on which reasonable and prudent people...act," and held that an alert by a trained canine is sufficient to establish probable cause for a warrantless search, and that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." 568 U.S. 237, 246-247 (2013). As alleged in the Complaint, Axl is such a certified detection canine. See Complaint, ¶ 25; 209,815 in United States Currency, No. 3:14-CV-00780, 2015 WL 5970186, at *9-10, N.7 (N.D. Cal. Oct. 14, 2015)(noting that "drug dog alerted to the large sum of Defendant currency, again providing a strong link to drug trafficking," and questioning relevance of pre-Harris case law).

Claimants' response to the allegations in the Complaint is largely to ask the Court to draw inferences in their favor and against the government – which this Court cannot do at this stage. For example, Claimants suggest that the circumstances of the attempted delivery of the defendant currency were innocent (see Mot. at 8 ("[I]t would be reasonable for individuals not to wish to announce to anyone within earshot that they are holding $200,000 in cash in order to avoid robbery"), but while this is one (potentially) plausible inference from these circumstances, facing competing inferences, the Court cannot favor the movant at this stage. The Court is obligated to accept – for present purposes only – the competing inference; namely, that the use of coded language and circumstances of this meeting are indicative of the illegal narcotics trade. See, e.g., Complaint ¶ 17 ("U.S. Currency serial numbers are often used as a verification process to deliver or receive narcotics

1   or narcotics proceeds, as they cannot easily be forged or altered."").
2   As another example, Claimants argue that "no attempts were made to
3   hide" the defendant currency and consent was given to search the
4   vehicle (Mot. at 9), but ignore that the Vehicle's occupants claimed
5   not to own the defendant currency, with one stating that he was
6   simply "do[ing] someone a favor" and refusing to say more. Complaint,
7   ¶ 21-22. Again, Claimants' proposed innocent explanations are
8   premature, and the Court is obligated to credit the competing
9   inference – that a courier found with $200,000 in unmarked bills in a
10  cardboard box claiming to be "doing a favor" for someone is
11  indicative of illegal activity, not legitimate business. As a final
12  example, Claimants suggest that there is nothing suspicious about
13  Singh and Gallardo's exchanging of a bill to confirm serial numbers
14  (mot. at 8), but ignore the specific allegation that this is a method
15  of identification used in narcotics transactions. Complaint, ¶ 17. At
16  this stage, these proposed innocent explanations are premature.

17      ***C.   Claimants' Remaining Arguments Lack Merit***

18          Claimants identify a variety of purported "omissions" in the
19  Complaint. See Mot. at 4-6. Simply put, these are questions for
20  discovery, not the basis for dismissal on the pleadings. The
21  government's burden is to "state sufficiently detailed facts to
22  support a reasonable belief that the government will be able to meet
23  its burden of proof at trial," (Supp. Rule G(2)(f)), and in this
24  Circuit, to allege "reasonable grounds to believe that the property
25  was related to an illegal drug transaction, supported by less than
26  prima facie proof but more than mere suspicion." United States v.
27  $493,850.00 in U.S. Currency, 518 F.3d 1159, 1169 (9th Cir. 2008).
28

The Complaint sets forth Claimants' own actions (Complaint, ¶¶ 10-13, 16), dates of the relevant intercepted call and seizure (id., ¶¶ 10-11, 13-15), the identities and identification documents of the couriers (id., ¶ 18), the location of the seizure and specific vehicle the defendant currency was seized from (id.), and the identity of the officers involved in the dog sniff and procedures applied. Id., ¶ 25-26.[5] Indeed, Claimants' own motion goes on to identify at least seven sets of facts which the government alleges support forfeitability here. See Mot. at 6-11. A forfeiture complaint is not intended to be a substitute for full discovery, and Claimants' own motion shows that they have more than enough information to "commence an investigation of the facts" (Supp. Rule E.2), which they can supplement through discovery.

Claimants also assert that "the government provides no basis for Claimants to have been on notice that they were interacting with a supposed drug dealer." Mot. at 7. This is incorrect, as the Complaint alleges that Singh used coded language for U.S. Currency, which would put any average person on notice that they might be involved in questionable business. But more importantly, the Claimants' guilty knowledge is not part of the government's burden; it is an element of an affirmative defense of innocent ownership. See 18 U.S.C. § 983(d). The government has no obligation to negate the elements of an

---

[5] While Claimants dispute that the government could have any valid reason for omitting information regarding the broader DTO investigation from the Complaint, they fail to identify how they have been prejudiced by having to wait for discovery as to this information, or cite to any precedent dismissing a forfeiture complaint for these reasons. Indeed, Claimants' sole cited authority, United States v. Aguilar, (Mot. at 6), describes this standard as a "low bar" and held that "Supplemental Rule E(2)(a) does not articulate an onerous standard." 782 F.3d 1101, 1109 (9th Cir. 2015).

affirmative defense in the Complaint, because an affirmative defense is not an element of a plaintiff's claim, but rather, a defense to liability where the plaintiff has met all elements of her claim, the burden of which is borne by the defendant. See United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997). A complaint "need not anticipate, and attempt to plead around, potential affirmative defenses." Id., see also WB Music Corp. v. Futuretoday, Inc., No. 2:18-CV-01238-CAS, 2018 WL 4156589, at *3 (C.D. Cal. Aug. 28, 2018) ("[A] complaint's failure to allege facts solely related to affirmative defenses is not a defect in the complaint because affirmative defenses must be pleaded in the answer, not the complaint." (quoting Davis v. Indiana State Police, 541 F.3d 760, 763 (7th Cir. 2008)). The government's burden is to show that the defendant currency consisted of narcotics proceeds, and if the government prevails on that question, then the Claimants will bear the burden of proving that they were unaware that the defendant currency was tainted.[6]

### D. The Court Should Permit the Government to Amend as an alternative to Dismissal

Finally, while Claimants' Motion should be denied outright on the bases detailed above, to the extent that the Court determines that the allegations of the Complaint are insufficient, leave to amend should be liberally granted. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("a complaint should not be dismissed for failure to

---

[6] Claimants also suggest that the Court should be skeptical because Gallardo and Montoya were released on scene as alleged (Mot. at 8-9), but the Complaint cites the specific provisions of California law at issue which provided for their immediate release in such circumstances. Complaint, ¶ 23. It is hardly suspicious that FPD officers followed California law.

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 16 (D.D.C. 2013) (granting motion to dismiss forfeiture complaint, but granting leave to amend, as "[t]he court has little doubt that the government could cure these deficiencies by filing an amended complaint that alleges additional facts.").

## IV.   CONCLUSION

Based on the above, the Government respectfully requests that this Court deny Claimants' motion to dismiss, as the verified complaint states a claim upon which relief can be granted and also states sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial.

Dated: January 11, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery
Section


_____/s/_____
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

16