Jonathan Corbett, Esq. (CA Bar No. 325608)
**CORBETT RIGHTS, P.C.**
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX:   (310) 675-7080
E-mail: jon@corbettrights.com
*Attorney for Claimants Jasmol Singh & Umit Bagga*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br>*Plaintiff,*<br><br>v.<br><br>$200,000 in U.S. Currency,<br>*Defendant* | Case No. 2:22-CV-7443-AB-PD<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>Motion Date: Feb. 3rd, 2023, 10am<br>Courtroom 7B |

On December 9th, 2022, Claimants Jasmol Singh and Umit Bagga filed a motion to dismiss the Complaint against their property, arguing that the government has failed plausibly to allege facts that would support a reasonable belief that the property was connected to an illegal drug transaction. ECF No. 15 (the "Motion"). In opposition, the government has alleged that drawing all inferences in their favor, their complaint states a claim. ECF No. 17 (the "Opposition").

But the government inappropriately blends the normal pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("plausibility"), with the heightened pleading standards of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, *e.g.*, Fed. R. Civ. P G(2)(f) ("sufficiently detailed facts to support a reasonable belief"). Properly using this heightened pleading standard, the government has failed to discharge its burden and the Complaint must be dismissed,

- 1 -

and using any standard, the unexplained, conclusory assertions disguised as assertions of fact made therein are due no credit by the Court.

## ARGUMENT

### I. The Opposition Does Not Address Claimant's Argument that the Complaint Fails to Allege Facts Sufficient to Commence an Investigation

The Motion points out that "Rule E(2)(a) requires the government 'state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, *without moving for a more definite statement*, to commence an investigation of the facts and to frame a responsive pleading' (*emphasis added*)." Motion, p. 6.

The Opposition does not even address Claimant's argument that, based on the complaint, it would be unable to investigate the factual basis. The closest they come is a footnote stating that "the Complaint provides substantial information sufficient for Claimants to identify Trafficker 1 even before discovery begins." Opposition, p. 13[1], fn. 3. But: 1) assuming "Trafficker 1" is a drug dealer and Claimants are innocent business people, it is unlikely they know or can determine Trafficker 1's true identity, and 2) the identity of "Trafficker 1," by itself, certainly does not allow Claimants "to commence an investigation of the facts and to frame a responsive pleading."

The government repeatedly alleges that any missing facts may be obtained via discovery. Opposition, pp. 18, 19. Whether this is true or not, the requirement is that they disclose sufficient facts *in the complaint*. There is not a requirement that Claimants demonstrate "how they have been prejudiced" by the government's

---

[1] All page numbers refer to ECF-stamped header page numbers, not litigant-provided footer page numbers.

failure to meet the heightened pleading standard. Opposition, p. 19, fn. 5. And, this requirement has nothing to do with plausibility, inferences, reasonableness, or drawing facts in favor of the government, and has everything to do with ensuring that when the government takes someone's money and demands they fight in court to get it back, they are required to put up their facts at an earlier stage than generally required in federal civil litigation – and here, they have failed to do so.

## II. The Complaint Does Not Even Provide a Reasonable Belief that Claimants Did Business with a Drug Dealer

The Complaint is founded upon the proposition that Claimants were doing business with a known drug dealer; without this, the Complaint does not even arguably state a claim for forfeiture. Claimant's Motion points out that "[t]he government tellingly omits the following details: 1) the name of the individual who was wiretapped, 2) the name of the drug trafficking organization, 3) the basis for concluding that the individual worked for the drug trafficking organization, 4) the type or quantity of drugs allegedly being bought or sold, 5) any mention whatsoever, coded or not, of drugs on the wiretap between Claimant Singh and "TRAFFICKER 1," and 6) the disposition of the criminal cases against the men arrested." Motion, p. 4.

Indeed, the only allegation in the Complaint that supports that "TRAFFICKER 1" was actually engaged in the drug trade is that the Riverside Task Force thought the same. *See* Complaint, ¶ 9. They do not identify the basis for their conclusion that this person is "a multi-kilogram cocaine trafficker" or the basis for their conclusion that this person worked "on behalf of the DTO." *Id*. They simply state the same. The *only* factual support for either of these conclusions is that TRAFFICKER 1 used "coded language" in intercepted phone calls, but the only "coded language" they describe is using the word "documents" to refer to currency.

In fact, they do not even explain why they interpreted the word "documents" to refer to currency. They just allege that this was coded language.

The Opposition asserts that "agents were familiar with the coded language used by the DTO based on their ongoing investigation." Opposition, p. 7. That would be a *start* to giving foundation to their assertion that TRAFFICKER 1 was using coded language, but this: 1) is not found within the four corners of the Complaint, and 2) still gives insufficient context as to why, at that moment, the use of the word "documents" was referring to money and not a contract, purchase order, invoice, or the like. An agent being "familiar" with how drug traffickers speak would be sufficient foundation for his or her testimony, but the agent must then actually give the testimony to explain what was said and why the context indicated a drug transaction rather than an actual exchange of documents. Surely even drug dealers also have documents, and more is necessary to distinguish.

### III. The Failure of the Government's Lengthy Wiretap Investigation Distinguishes This Case from Others

In *U.S. v. $67,220.00 in U.S. Currency*, 957 F.2d 280 (6th Cir. 1992), the cash seizure was the result of an officer spotting cash protruding from a man's clothing in an airport.

In *U.S. v. $215,300 in U.S. Currency*, 882 F.2d 417 (9th Cir. 1989), the cash seizure was the result of the same.

In *U.S. v. $83,310.78 in U.S. Currency*, 851 F.2d 1231 (9th Cir. 1988), the cash seizure was the result of a police visit to a home investigating a battery, who happened to see the cash.

In *U.S. v. $493,850.00 in U.S. Currency*, 518 F.3d 1159 (9th Cir. 2008), the cash seizure was the result of the search of a vehicle pulled over for veering over the center line.

All of these cases, cited in the Opposition, bear a stark contrast to the case at bench in that before the seizure here, the government meticulously wiretapped and tracked the actors involved for months, whereas in the cited cases, the government had to act quickly on evidence that presented itself in the field. This is relevant because despite having the benefit of wiretapping TRAFFICKER 1 and/or Claimants (the Complaint is unclear as to who was the target) for *months*, the government never identified any movement *of drugs*. No drugs were ever alleged to have been discussed during these wiretaps (whether in "coded language" or not). No drugs were found during the attempted hand-off of the seized currency. No connection to drugs has ever been plausibly alleged, save for the government's unexplained say-so that the person with whom Claimants were speaking worked for a drug trafficking organization, the government's unexplained say-so that "documents" meant cash, and the sniff of a drug dog indicating that at least 1 of the 2,000+ bank notes seized had been near drugs even though the majority of currency circulating in Los Angeles could say the same².

---

² The Opposition cites a book that states that drug dogs alert not to cocaine but "to a chemical by-product called methyl benzoate that evaporates," and thus, contra to our assertion in the Motion, p. 10, the dog alert shows *recent* proximity between the currency and drugs. Opposition, p. 17, fn. 4. First, not all dogs: this is only true for dogs specifically so-trained, and the Complaint does not specify if the dog was trained on cocaine or cocaine by-product. *U.S. v. $22,474.00 in U.S. Currency*, 246 F.3d 1212 (9th Cir. 2001). Second, the Complaint explicitly specifies that the dog actually used will alert not just on cocaine, but on a plethora of drugs *including marijuana*. Respectfully, for currency in Los Angeles not to come in contact with marijuana in 2023 is mission impossible: one can frequently smell the odor of burning marijuana within a couple blocks of the courthouse door, and the State of California permitted the sale of over **five billion dollars** of this drug last year. See Cal. Dept. of Tax & Fee Admin, "Cannabis Tax Revenues," https://www.cdtfa.ca.gov/dataportal/charts.htm?url=CannabisTaxRevenues. Based on the details of the drug dog search within the four corners of the Complaint, this search has no more than a scintilla of probative value.

The Court is permitted to aggregate multiple facts, even when any one fact alone would be insufficient, to determine that the "reasonable belief" standard has been met. But the Court should also enter the mitigating facts into the equation. Here, we have a government investigation involving months of wiretaps and, presumably, unspecified intelligence from a variety of sources, and the government came up empty-handed when it comes to drugs. Not a single mention of drugs was recorded, and not a single gram of drugs was recovered. This failure despite all eyes on Claimants and this alleged drug trafficker is strong evidence that there are no drugs involved here, and the government, perhaps upset that it had spent months investigating to come up with nothing, blew their cover – *i.e.*, gave up – in order to not go home empty handed. Their hands, while not empty, are filled with currency for which there was no lawful basis for its seizure.

# CONCLUSION

The government presents the Court with unexplained conclusions that masquerade as allegations of fact. Even without a heightened pleading standard, the Court has no obligation to accept conclusory statements as true. But given the standard required here, heightened when the government deprives citizens of their money, *sans* criminal charges, and demands that they bear the burden of convincing a court to return it, the government's Complaint falls far short. Claimant's motion should be **granted**.

Dated:   Los Angeles, CA
         January 20th, 2023

Respectfully submitted,

_____/s/Jonathan Corbett_____
Jonathan Corbett, Esq. *(CA Bar 325608)*
**CORBETT RIGHTS, P.C.**
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX:   (310) 675-7080
E-mail: jon@corbettrights.com
*Attorney for Jasmol Singh & Umit Bagga*