1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JONATHAN GALATZAN
4  Assistant United States Attorney
   Chief, Asset Forfeiture & Recovery Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   ALEXANDER SU (Cal. Bar No. 297869)
6  Assistant United States Attorneys
   Environmental Crimes & Consumer Protection and
7  Asset Forfeiture & Recovery Sections
        1300/1400 United States Courthouse
8       312 North Spring Street
        Los Angeles, California 90012
9       Telephone:  (213) 894-2426/0719
        Facsimile:  (213) 894-3713/0142
10      E-mail:     Daniel.Boyle2@usdoj.gov
                    Alexander.Su@usdoj.gov
11
   Attorneys for Plaintiff
12 UNITED STATES OF AMERICA

13                     UNITED STATES DISTRICT COURT

14                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 UNITED STATES OF AMERICA, | Case No. 2:22-CV-7443-AB-PD |
| 16       Plaintiff, | GOVERNMENT'S L.R. 16-10 TRIAL BRIEF |
| 17       v. | |
| 18 $200,000.00 IN U.S. CURRENCY, | |
| 19       Defendants. | |
| 20 JASMOL SINGH, | Date:     Feb. 27, 2024<br>Time:     8:30 a.m.<br>Location: Courtroom of the |
| 21       Claimant. | Hon. André Birotte, Jr. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dan G. Boyle and Alexander Su, submits its Trial Brief pursuant to Civil Local Rule 16-10.

This Trial Brief is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 20, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

_____/s/_____
DAN G. BOYLE
ALEXANDER SU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TRIAL BRIEF**

**I.  INTRODUCTION**

As the Court is aware, the United States commenced this forfeiture action against defendant $200,000.00 in U.S. Currency (the "Defendant Currency") pursuant to 21 U.S.C. § 881, alleging that the Defendant Currency consisted of narcotics proceeds. During a December 8, 2023 hearing, the Court verbally granted the government's motion for partial summary judgment (Dkt. 62), ruling that the Defendant Currency was proceeds of drug trafficking, and thus, subject to forfeiture. See also Court's Written Order (Dkt. 74). Accordingly, the government has carried its burden, and trial here will be limited to Claimant Jasmol Singh's proffered affirmative defense that he is an innocent owner of the Defendant Currency pursuant to 18 U.S.C. § 983(d)(3) and (6)

The government submits this Trial Brief pursuant to L.R. 16-10, as well as paragraph III.I of the Court's standing Civil Jury Trial Order, in order to update the Court following the parties' previously-filed Memorandum of Contentions of Fact and Law (Dkt. 64 & 71), and to address other anticipated unusual issues considering the posture of trial in this action.

**II.  THE COURT'S RULINGS AT THE PRETRIAL CONFERENCE**

On February 2, 2024, the Court held the Pretrial Conference (see Dkt. 87), and reached the following rulings:

  **A.  Order and Procedure Of Trial**

Following partial summary judgment in the government's favor, the Court ruled that Claimant will give the first opening statement, lasting no more than 15 minutes, followed by the government's opening statement, also lasting no more than 15 minutes. The government will

then read the parties' fact stipulation into the record, and Claimant will then present his case-in-chief, followed by the government's case-in-chief. The Court held that each party shall have no more than 3 hours to present its case, inclusive of cross-examination, absent further order from the Court. At the close of all evidence, Claimant will make his summation, lasting no longer than 30 minutes, followed by the government's summation, also lasting no longer than 30 minutes, and then any rebuttal by Claimant.[1]

### B. The Court Granted All Of The Government's Motions-in-Limine

The Court granted the Government's two motions-in-limine ("MILs"), which Claimant declined to oppose in substance. The government's first MIL sought to preclude any evidence not previously produced (Dkt. 65) and its second MIL sought to preclude questioning, evidence, or arguments pertaining to affirmative defenses not properly before the jury (Dkt. 66).

### C. The Court Granted One And Denied One Of Claimant's Motions-in-Limine

The Court further ruled on Claimant's two MILs, which sought to preclude evidence regarding a drug dog search (Dkt. 73) and to preclude evidence regarding the inspection of a dollar bill (Id.). The Court granted the first MIL and denied the second MIL. Dkt. 87.

### D. The Court's Rulings On Claimant's Proposed Witnesses

The Court also ruled that Claimant must choose between calling DEA Special Agent Heja Rosebiani or DEA Task Force Officer ("TFO") Mark Carroll in Claimant's case-in-chief. The Court also permitted

---

[1] Because the Court did not set a time limit for rebuttal, the government presumes that Claimant will need to reserve time for rebuttal, consistent with ordinary practice for bifurcated timed arguments, such as appellate argument.

Claimant to call former DEA TFO Tyler Pope as a witness, but denied Claimant's request to call Fontana Police Department Officer Nelson Romero.

### III. IDENTIFICATION OF ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

#### A. The Burden of Proof

The parties agree that Claimant has the burden of proof, which the Court recognized in setting the order and procedure of trial, as discussed above. Accordingly, pursuant to Federal Rule of Civil Procedure 50(a), the government may move for judgment as a matter of law if, after hearing Claimant's case-in-chief, a reasonable jury would not have a legally sufficient evidentiary basis to find for Claimant on any required element of Claimant's proffered innocent owner defense. The parties have stipulated to these elements in their joint jury instructions. See Dkt. 78, at 31-32.

Rule 50 applies equally to all parties in action – plaintiffs and defendants, see Fed. R. Civ. P. 50(a)(1)("If a *party* has been fully heard on *an issue* during a jury trial…" (emphasis added) – and is a proper procedural tool for resolving affirmative defenses. For example, in Jang v. Bos. Sci. Corp., Case No. ED-CV-05426-VAP-MRW, 2015 WL 13672836 (C.D. Cal. July 6, 2015), the plaintiff filed a motion for judgment as a matter of law pursuant to Rule 50(a) after the defendant had rested its case, which the court granted, finding that "no reasonable jury could find in Defendant's favor on this affirmative defense." The government reserves the right to make such a motion at the close of Claimant's case-in-chief.

3

**B.     Claimant's Intended Direct Examination Of TFO Carroll Could Contravene The Court's Exclusion Of Questioning, Evidence, And Argument That Goes To Non-Innocent Owner Defenses**

Following the Final Pretrial Conference, Claimant informed the government that he intends to call TFO Carroll as a witness in his case-in-chief.

While the Court has permitted Claimant to call TFO Carroll, the government submits that the Court's order granting the government's MIL No. 2 (Dkt. 66), will limit the scope of questioning for TFO Carroll. Claimant is now barred from seeking to question TFO Carroll on matters relating to any alleged Fourth Amendment violations (i.e., suppression of evidence) or purported "outrageous government conduct." See Dkt. 66 (Gov. MIL No. 2), at 5-6. As the government argued in its MIL No. 2, which Claimant elected not to oppose, Claimant has had his opportunity to raise these issues and elected not to do so. Because neither of these issues addresses the agreed-upon elements of the innocent owner defense, any such questions would be barred by the Court's order on the government's MIL No. 2.

Nonetheless, based on Claimant's Response to the government's objections (Dkt. 85) and his deposition of TFO Carroll, the government believes that Claimant's intended questioning may seek to improperly impeach TFO Carroll on direct exam regarding an affidavit sworn-to by TFO Carroll seeking, among other things, a warrant to wiretap Claimant's phone. This can only be construed as an effort to confuse the jury as to Claimant's burden. As the Court recognized in granting the government's motion, the time to make suppression arguments has come and gone. As such, the only purpose of asking questions on direct exam that would challenge the accuracy of TFO

Carroll's affidavit would be to confuse the jury by trying to challenge the grounds for the seizure of the Defendant Currency.

To the extent that Claimant seeks to question TFO Carroll on matters which do not relate to Claimant's innocent ownership defense, the government intends to object and may seek any other appropriate relief as necessary during trial.[2]

### C. Claimant Will Not Be Calling Former TFO Tyler Pope And The Parties Will Instead Rely On Deposition Testimony

Since the Pretrial Conference, the parties learned that, due to the one-week continuance of trial, Officer Pope is not available to appear at trial. As a result, Claimant has informed the government that he is willing to stipulate to Officer Pope's unavailability such that the parties would rely on the certified transcript of Officer Pope's deposition. Claimant has stated that he will offer a witness yet to be determined who will read portions of Officer Pope's testimony into the record, and the government will designate portions of Officer Pope's deposition testimony in place of cross-examination. Pursuant to Fed.R.Civ.P. 30(c)(2), all objections preserved on the record may be raised at trial, as well as any other objections subject to Fed.R.Civ.P. 32(b). In particular, the reserves reserves the right to object on hearsay grounds where no relevant hearsay exception applies.

---

[2] Claimant also continues to assert that he has an excessive fines argument if the jury does not side with him. As previously briefed, the excessive fines defense is foreclosed by Ninth Circuit law. See, e.g., United States v. Real Prop. Located at 22 Santa Barbara Drive, 264 F. 3d 860, 875 (9th Cir. 2001); Govt's MIL No. 2, § III.C at 8:13-8:20. However, this issue does not need to be resolved pre-trial.

5

**D. The Government Intends To Introduce Compilations of Reconstructions Of Claimant's WhatsApp Messages, Which Were Produced In Native Format**

To streamline the presentation of evidence for the jury, the government intends to use summary charts regarding Claimant's bank records and communications relating to certain transactions.

Charts and summaries of evidence are governed by Federal Rule of Evidence 1006, which permits the introduction of charts, summaries, or calculations of voluminous writings, recordings, or photographs which cannot conveniently be examined in court. See Fed. R. Evid. 1006. Accordingly, a summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection. Id; see also United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988). All that is required for the rule to apply is that the underlying writings be voluminous and that in-court examination not be convenient. United States v. Scales, 594 F.2d 558, 562 (6th Cir. 1979) (admitting charts summarizing charges in indictment and overt acts evidencing conspiracy charge). Although the materials underlying the summary must be "admissible," they need not themselves be "admitted" into evidence. Meyers, 847 F.2d at 1412.

In addition, the summary chart must be accurate, authentic, and properly introduced. Scales, 594 F.2d at 563. Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records upon which the chart is based and (2) have knowledge of the analysis of the records referred to in the chart. Id. Neither of these requirements

necessitates any special expertise. Id. In addition, summary charts may be used by the government in its opening statement. See United States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985) (approving government's use of chart); United States v. Rubino, 431 F.2d 284, 289-90 (6th Cir. 1970) (same).

Here, the government has produced the underlying data for each of its proposed summary exhibits, as reflected on the government's Exhibit List. See ECF No. 68 (identifying GEXs 14-17 as summary charts, and identifying underlying documents). These documents exceed hundreds of pages of text, as well as hundreds of multimedia files, and could thus not be easily examined by the Jury or Court absent summary form.[3] In addition, the government has produced the proposed summary charts to Claimant's counsel, satisfying Rule 1006's requirement that the opposing party be given reasonable time to examine any proposed summaries.

### E. The Government Intends To Introduce the Expert Report of Retired IRS-CI Agent Peter Platt

To further streamline the presentation of evidence in accordance with the Court's set time limits, the government intends to introduce the report of the government's retained expert, Peter Platt, in order to limi direct testimony as to specific opinions and conclusions

---

[3] As a separate matter, certain of the materials summarized include logs from a data archive file produced by defendant of his communications with his contacts in Mexico. Where the government intends to offer specific messages into evidence from these archive files – as opposed to summarizing the content of the files in their entirety – then pursuant to Federal Rule of Evidence 1003, the government has reconstructed such messages from the underlying data files, as the native files break up message content by file type (e.g., images, media, emojis, audios, text) and thus cannot be easily read in native format. The government anticipates that SA Rosebiani will testify to the reconstructed files and comparisons to the native originals.

7

reached. A copy of Mr. Platt's report is attached to this report at Exhibit A.

Mr. Platt was properly noticed as an expert for the government during discovery on September 12, 2023. Mr. Platt's report was produced to Claimant during discovery, and has been identified on the government's Exhibit List. See ECF No. 68 (identifying GEXs 18 as "Expert Report of Peter Platt"). Claimant ultimately elected not to depose Mr. Platt during the expert discovery period, but Mr. Platt's report is signed and dated, and the government expects that Mr. Platt will be present at trial and available to be cross examined on his opinions and analysis.

Pursuant to Federal Rule of Evidence 703, an expert witness may rely on admissible and inadmissible evidence in reaching an opinion, but "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Here, Mr. Platt's report largely relies on an analysis of Claimant's own bank records, which are non-hearsay business records and would otherwise be admissible evidence under Federal Rule of Evidence 803(6). Similarly, Mr. Platt reviewed Claimant's discovery responses, which are admissible as party-opponent admissions. While Mr. Platt also identifies a small number of publications he reviewed in preparing his report, his report only cites to those publications in limited respects, and these citations will be important to help the jury understand the sources of regulatory guidance upon which Mr. Platt bases his analysis, and in particular, guidance by the Financial

1  Crimes Enforcement Network ("FinCEN") and similar regulators. See,
2  e.g., Ex. A, at ¶ 18.3 (quoting FinCEN guidance).
3       Considering the time limitations on the parties, admission of
4  Mr. Platt's report in lieu of a detailed recitation of the data
5  stated therein would be an efficient use of the Court and Jury's time
6  – while still allowing for cross examination of Mr. Platt by
7  Claimant. See e.g., Televisa, S.A. de C.V. v. Univision Commc'ns,
8  Inc., 635 F. Supp. 2d 1106, 1110 (C.D. Cal. 2009) (admitting expert
9  report under F.R.E. 807 where opposing party had opportunity to
10 cross-examine expert in earlier deposition and "[s]ince the item in
11 question is a report prepared by a designated expert witness, rather
12 than a remark or statement, many of the classic hearsay risks, such
13 as faulty perception, faulty memory, and faulty narration do not seem
14 to be of concern."). As the Court can see upon review of Mr. Platt's
15 report, it includes detailed analysis of hundreds of pages of bank
16 records for Claimant's company ("Phone Traders"), including detailed
17 recitations of dates, transactions, and amounts. See, e.g., Ex. A, ¶¶
18 //
19 //

9

17.7, 17.8, 17.9, 17.13, and 17.14. Reciting such data to the Jury is unlikely to be an efficient use of the limited time, but is necessary to support Mr. Platt's conclusions.

Dated: February 20, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

    /s/
DAN G. BOYLE
ALEXANDER SU
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

10